**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No.: 3:25-cr-069-2** |
| **Plaintiff,** | |
| | **Judge Michael J. Newman** |
| **v.** | |
| | **GOVERNMENT'S RESPONSE IN** |
| **PAUL ALLEN,** | **OPPOSITION TO DEFENDANT'S MOTION** |
| | **FOR PRETRIAL RELEASE DUE TO** |
| **Defendant.** | **[ALLEGED] MEDICAL NECESSITY** |

**INTRODUCTION**

After serving 28 years in prison for murder, defendant Paul Allen was paroled in 2023. Allen had been paroled for less than a year when he became a key player in an armed drug trafficking ring. Allen's role in this drug trafficking organization led a federal grand jury to indict Allen with multiple drug and gun crimes carrying a potential life sentence. (R. 13.)

The Honorable United States Magistrate Judge Peter B. Silvain, Jr., ordered Allen detained pending trial. (R. 9.) Allen now asks this Court to release him from pretrial detention due to his alleged discomfort with the jail's transportation to and from his necessary medical appointments. (R. 21.) For the following reasons, the Court should deny his motion.

**LEGAL STANDARD**

The Court reviews the Magistrate's Order *de novo*. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1130 (S.D. Ohio 2000). "[M]eaningful de novo review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge. *Id.*

1

When evaluating whether a defendant may be released pending trial, courts must examine whether the defendant presents a risk of flight or a danger to the community. *See* Title 18 U.S.C. § 3142. Where a defendant has been charged with an offense under the Controlled Substances Act which carries a maximum term of imprisonment of ten years or more, a rebuttable presumption arises that there are no condition or combination of conditions that would reasonably assure the appearance of such person as required and the safety of the community. 18 U.S.C. § 3142(d)(3)(A). Likewise, there is a rebuttable presumption of detention when an individual is charged with possessing a firearm in furtherance of a serious drug offense. A "presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). "Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

Section 3142(g) sets out the factors the Court should consider in making a determination on detention: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's physical and mental condition; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The weight of the evidence against the person "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 36 (6th Cir. 1985)).

//

//

## **ARGUMENT**

As an initial matter, Allen's request for pretrial release is likely moot because he has an Ohio Adult Parole Authority hold for parole violations. (*See* Ex. 1.) Allen was on parole for a 1995 murder conviction when he committed the instant offenses.

But even if Allen weren't subject to a parole hold, this Court should still deny his motion. Allen states in his request for pretrial release that he "has declined being transported to the doctor from the Shelby County Jail a couple of times due to the difficulty of being transported," explaining that the ride to the doctor's office from the jail is "unbearable." Allen claims that he "can tolerate being transported in a civilian vehicle," but offers no explanation as to what differences exist between the jail's transport vehicle and a civilian vehicle that makes the former unbearable and the latter tolerable.

Prior to Allen's arrest on these charges, Allen had repeatedly failed to show up for medical appointments. As USMS Charles Sanso explained to defense counsel and undersigned counsel, Allen missed four of the last six medical appointments prior to his arrest in this case. Allen's pattern of eschewing medical care continued once he came into federal custody. While Allen has been detained in this matter, he has repeatedly declined to participate in his medical appointments and has offered various excuses for his refusals.

For instance, on October 1, 2025, Allen refused to get a PET scan that had been ordered by his doctor because Allen did not want to get up early in the morning—a remarkable refusal that left the corrections officer "kind of dumbfounded." USMS Charles Sanso provided defense counsel and undersigned counsel with the following details from the Shelby County Jail's medical unit about Allen's refusal:

> I wanted to let you know this morning one of our CO's [corrections
> officers] had Mr. Allen come to medical at 0620.  We were going to

3

house him in medical for today d/t his PET scan for tomorrow.  He was going to be on a special diet of NO CAFFEINE, NO SWEETS, NO BREAD, NO PASTA.  For the upcoming PET scan.  He stated, "I was doing my laundry." And its laying on my bed.  I came out because I thought I was riding out."  I said, We can let you go back and finish your laundry,  (he was just wanting to hang it over the railing.  Then we will have you come back. I explained why he was coming back.  He then kind of got an attitude and said, You had me come back at 620 in the morning?  I said well d/t the diet yes. And then later on early tomorrow morning you cannot have anything to eat or drink until after your test. The CO had a mat and a blanket already in the cell for him. I had told him he could go back to sleep when he got done with his laundry.  He said, so I'm back here for YOUR convenience.   I said, I start seeing the diabetics at 0730 and by the time I am done, they are serving breakfast and I don't want to take the chance of you eating something you're not supposed to.

He said, I am 54 y/o and if I want to refuse then I can.   I asked, You are refusing to come back here? Or refusing the PET scan?  He said I'm refusing everything. And he started walking out of medical.

I was kind of dumbfounded.   So when I passed medications this morning I asked him to sign the refusal form.  Which he refused to sign that.  My officer with me signed that he refused.  He just kept saying "I'm good." I even asked him if he had changed his mind about the test.  He would only say, "I'm good."

I will be calling his doctor's office and letting them know and also the place he is to get his PET scan tomorrow and canceling.

Then, on October 14, 2025, approximately two weeks after Allen's refusal to participate in the PET scan, Allen again refused medical treatment—this time, because he did not want to change his clothes. USMS Charles Sanso provided defense counsel and undersigned counsel with the following details from the Shelby County Jail's medical unit about this refusal:

Paul Allen refused to go to his Dr. Appt. this morning. This was a blood specialist in Columbus. He claims it's because he could not wear his whites out under his uniform, which is standard, we give them black sweatshirts to put on under their shirts. We do not allow those to go out because of our protocol with clothing exchange.

4

Allen now offers an entirely different reason why he is refusing medical care—an uncomfortable van ride. The government respectfully submits that the reasons Allen has given for refusing medical treatment—early mornings, changing clothes, and van rides to the doctor's office—are far from compelling.

Moreover, the precedent Allen is asking this Court to set is dangerous. If detained defendants repeatedly refuse reasonable instructions regarding medical appointments, and then use their own refusals as a basis for release on bond, it would incentivize defendants to refuse medical treatment in the hopes of getting pretrial release. This could ultimately put defendants' health at risk, in addition to resulting in malingerers and frivolous bond motions.

Critically, the nature and circumstances of the offenses charged, as well as the weight of the evidence against him, show that Allen is an imminent danger to the community. Allen was a key figure in a large-scale, sophisticated drug trafficking organization that was responsible for bringing kilograms of cocaine and other drugs into the Dayton community. As alleged, for more than a year, Allen and his coconspirators used various houses and firearms to enable their drug trafficking scheme. FBI agents arrested Allen at a stash house that contained approximately 40 kilograms of cocaine pressed into bricks. For context, ingestion of 1 gram or more of cocaine is likely to be fatal.[1] This means that Allen and his drug trafficking organization had enough cocaine to kill 40,000 people (or about 1 out of 3 people living in Dayton, Ohio). The quantity of cocaine Allen and his coconspirators possessed had a street value of more than one million dollars. In addition to these drugs, Allen and his coconspirators also possessed two loaded firearms: (1) a

---

[1] Benowitz NL, Gugelmann HM. COCAINE. In: Olson KR, Smollin CG, Anderson IB, Benowitz NL, Blanc PD, Kim-Katz SY, Lewis JC, Wu AB. eds. *Poisoning & Drug Overdose, 8e*. McGraw Hill; 2022. Accessed October 29, 2025.  https://accessmedicine.mhmedical.com/content.aspx?bookid=3195&sectionid=266328960

Glock 22 pistol with a loaded extended magazine containing twenty rounds of ammunition, and (2) a Springfield Hellcat 9mm pistol loaded with twelve rounds of ammunition.

In addition to the above, FBI agents found at a different stash house—one that, based on physical and electronic surveillance, agents know was primarily operated by Allen—a trafficking quantity of cocaine base and a firearm.

Based on this conduct, Allen faces drug charges that carry serious penalties—a mandatory ten years up to life in prison if convicted.  Drug trafficking is a serious offense and, in itself, poses a danger to the community.  *See e.g. United States v. Glasgow*, No. 1:20-cr-27-7, 2021 WL 2403136, at *6-7 (D.D.C. June 11, 2021) (noting that conspiring to sell drugs is a danger to the community). It also charges Allen with possessing firearms in furtherance of a serious drug offense, which, like the aforementioned drug charges, carries a presumption of detention. *See* Title 18 U.S.C. §§ 3142(e)(3)(A) and 3142(e)(3)(B). Each charge Allen faces carries the potential for life imprisonment—which is an incentive to flee.

Moreover, the evidence shows that Allen and his coconspirators used cell phones to effectuate their drug trafficking scheme. The conditions of release Allen proposes—such as an GPS monitor—would not prevent Allen from engaging in drug trafficking activity. All Allen needs is a cell phone to continue to sell lethal drugs. And, as Allen has shown based on his criminal conduct in violation of his parole, Allen is not inclined to follow Court orders to obey the law.

For all these reasons, and for all of the reasons articulated on the record before the Honorable United States Magistrate Judge Peter B. Silvain, Jr., the United States opposes Allen's pretrial release.

## **CONCLUSION**

As articulated herein and at Allen's detention hearing, Allen presents a danger to the

community and a serious risk of flight. These concerns cannot be adequately mitigated by any conditions of release. Allen has not proffered any compelling medical reason why he should be released. As such, the United States respectfully requests that the Court deny Allen's motion.

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

*s/Kelly K. Rossi*
KELLY K. ROSSI (NM 147107)
Assistant United States Attorney
200 W. 2nd St., Suite 600
Dayton, OH 45402
(513) 684-3711
Kelly.Rossi@usdoj.gov

7